**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

MHA, LLC,

     **Plaintiff,**

     **v.**

AMERIGROUP CORPORATION,
AMERIGROUP NEW JERSEY, INC.,
ABC COMPANIES 1–100, and JOHN
DOES 1–100,

     **Defendants.**

Civ. No. 18-16042 (KM) (JSA)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

     This is an action by the former owner of a hospital, MHA, LLC, against a
health insurer, Amerigroup New Jersey, Inc., and Amerigroup Corporation
("Amerigroup"). MHA seeks to recover for alleged non-payment for services
rendered by the hospital to Amerigroup enrollees. Amerigroup moves to dismiss
for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6). (DE 56.)[1] For the
following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

     Amerigroup offers healthcare plans to individuals eligible for Medicaid
and Medicare. (Compl. ¶ 12.)

     Medicaid is a "cooperative federal-state program under which the federal
government furnishes funding to states for the purpose of providing medical

---

[1]    Certain citations to the record are abbreviated as follows:

    DE = docket entry

    Compl. = Complaint (DE 1-1)

    Mot. = Amerigroup's Brief in Support of its Motion to Dismiss (DE 56-1)

    Opp. = MHA's Opposition to Amerigroup's Motion to Dismiss (DE 68)

    Reply = Amerigroup's Reply Brief (DE 69)

assistance to eligible low-income persons." *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 182 (3d Cir. 2004) (citation omitted). To administer Medicaid, New Jersey enters into contracts with managed care organizations, "MCOs" including Amerigroup. Medicaid-eligible individuals enroll in plans with Amerigroup, and New Jersey pays Amerigroup "a fixed monthly fee per patient and the anticipated use of services (the 'capitation payment')." *N.J. Primary Care Ass'n Inc. v. N.J. Dep't of Human Servs.*, 722 F.3d 527, 530 (3d Cir. 2013). MCOs, in turn, contract with providers to provide medical services to the MCO's enrollees and pay the providers using the capitation funds. *Id.*; *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 426 (6th Cir. 2013). But if an enrollee receives care from a provider with which Amerigroup does not contract (an "out-of-network provider"), Amerigroup need only reimburse the provider in limited circumstances, mostly when the provider furnished emergency services. *Appalachian*, 714 F.3d at 426; *Prince George's Hosp. Ctr. v. Advantage Healthplan Inc.*, 985 F. Supp. 2d 38, 40 (D.D.C. 2013).

Amerigroup also administers a similar program under Medicare. In contrast with Medicaid, the federal government solely—not the states—administers Medicare to provide health insurance to older individuals. *MHA, LLC v. Amerigroup Corp.*, Civ. No. 18-16042, 2021 WL 226110, at *1 (D.N.J. Jan. 21, 2021). The federal Centers for Medicare and Medicaid Services ("CMS") contracts directly with Amerigroup and pays Amerigroup a capitation fee. *Id.* Amerigroup, in turn, uses that money to pay providers, with which Amerigroup contracts for covered services rendered to individuals enrolled in its "Medicare Advantage" plan. *Id.* Amerigroup operates its Medicare Advantage plan as a health maintenance organization ("HMO"). (*See* Compl. ¶¶ 41, 63.) An HMO is, to simplify, a health insurance plan that acts as a healthcare provider itself or contracts with providers to provide healthcare to its enrollees. *See* N.J. Stat. Ann. §§ 26:2J-2(f); 26:2J-5(a)(4); *Butler v. Wu*, 853 F. Supp. 125, 130 (D.N.J. 1994).

MHA owned a hospital, Meadowlands, that served patients with Amerigroup plans under Medicare and Medicaid. (Compl. ¶¶ 18–19.) From December 2010 until July 2014, MHA did so as an in-network provider, under a Network Agreement with Amerigroup. (*Id.* ¶ 18.) From July 2014 until January 2018 (when MHA sold Meadowlands), MHA did so as an out-of-network provider. (*Id.* ¶ 19.) For accounts billed during the in-network period, MHA alleges that Amerigroup owes $60,492,941.84. (*Id.* ¶ 92.) For accounts billed during the out-of-network period, MHA alleges that Amerigroup owes $27,563,277.35. (*Id.* ¶ 91.) (The precise reasons that Amerigroup failed to pay are not clear from the Complaint.)

To recover for the alleged non-payment, MHA sued Amerigroup in New Jersey Superior Court, asserting claims for (1) violations of New Jersey regulations requiring coverage for emergency services; (2) violation of the Healthcare Information Networks and Technologies Act ("HINT Act"), N.J. Stat. Ann. § 17B:26-9.1; (3) fraudulent and negligent misrepresentation, and equitable and promissory estoppel; (4) unjust enrichment; (5) quantum meruit; (6) breach of contract based on a repudiation of the Network Agreement; (7) negligent misrepresentation; and (8) breach of contract as a third-party beneficiary of the Amerigroup-New Jersey Medicaid contract. (Compl. ¶¶ 94–173.) Amerigroup removed the case to this Court. (DE 1.)[2] Amerigroup now moves to dismiss the complaint.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise

---

[2]    This case was originally assigned to then-Chief Judge Linares. Amerigroup first moved to dismiss shortly after removal. (DE 6.) When this case was transferred to me, I issued an order to show cause as to whether there was federal jurisdiction and terminated the original motion to dismiss. (DE 41) Based on the submissions, I concluded that this court possessed subject matter jurisdiction. (DE 51; *see also MHA*, 2021 WL 226110, at *8.) Amerigroup then refiled its motion to dismiss. (DE 56.)

a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III. DISCUSSION

I discuss whether each claim is adequate overall, and then, as to the surviving claims, discuss Amerigroup's cross-cutting arguments for dismissal of portions of those claims.

### A. Count 1

In Count 1, MHA alleges that Amerigroup's non-payment violated regulations requiring Amerigroup to cover out-of-network emergency services, N.J.A.C. §§ 10:74-9.1 (applying to Medicaid plans), 11:24-5.3(b) (applying to HMOs), and services referred by an HMO, *id.* § 11:24-5.1(a)(1). (Compl., Count 1.) Amerigroup argues that MHA lacks a private right of action to seek damages for such regulatory violations. (Mot. at 16–19.)

There is no express provision allowing a claimant to bring a damages suit based on violations of those regulations. In such a case, "a private cause of action would have to be implied from the statutory scheme involved or the administrative regulations promulgated thereunder." *Jalowiecki v. Leuc*, 440 A.2d 21, 24 (N.J. Super. Ct. App. Div. 1981). To decide whether to imply a private right of action from a statute, New Jersey courts use a three-part test adopted from *Cort v. Ash*, 422 U.S. 66, 78 (1975). *See Jarrell v. Kaul*, 123 A.3d 1022, 1029 (N.J. 2015). A version of this test has been applied in New Jersey to decide whether to imply a private right of action from administrative regulations, in the context of the enabling statute. *Jalowiecki*, 440 A.2d at 26,

4

*cited favorably in R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1144 (N.J. 2001).[3] So I ask whether (1) the plaintiff is "one of the class for whose especial benefit the statute [or regulation] was enacted," (2) "there is any evidence that the Legislature [or agency with delegated authority] intended to create a private cause of action," and (3) "implication of a private cause of action in this case would be consistent with the underlying purposes of the legislative scheme." *Jarrell*, 123 A.3d at 1029 (cleaned up); *see Jalowiecki*, 440 A.2d at 26–27.

New Jersey courts apply this test against a general background reluctance to imply a private right of action. *Gaydos*, 773 A.2d at 1142. Compounding that reluctance here, federal courts will generally avoid expanding state-law liability in ways not foreshadowed by state-court precedent. *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002). It follows that federal courts "should be even less inclined" than state courts to imply private rights of action from state statutes and regulations. *Beye v. Horizon Blue Cross Blue Shield of N.J.*, 568 F. Supp. 2d 556, 571–72 (D.N.J. 2008).

I begin with the regulation that imposes obligations on Amerigroup to cover emergency services as to Medicaid enrollees, N.J.A.C. § 10:74-9.1, and then the regulations that impose similar obligations as to Medicare insureds, *see id.* §§ 11:24-5.1(a)(1), 11:24-5.3(b).

---

[3]    To be sure, federal courts addressing federal regulations have refined the analysis to focus on whether an agency's enabling statute permits a private right of action. *Three Rivers Ctr. for Indep. Living v. Housing Auth. of City of Pittsburgh*, 382 F.3d 412, 424 (3d Cir. 2004). In other words, "regulations do not furnish an independent basis to 'conjure' an implied right of action." *Id.* New Jersey courts do not appear to have foreclosed the possibility that a regulation itself could provide a private cause of action, but they have not grappled with the contrary reasons given by cases like *Three Rivers. See Jalowiecki*, 440 A.2d at 26. So I apply my analysis to both the regulations here and their larger statutory scheme. Because neither support a private right of action, I need not address thornier questions about agency power under New Jersey law.

### 1. N.J.A.C. § 10:74-9.1

N.J.A.C. § 10:74-9.1 requires MCOs to reimburse out-of-network providers that provide emergency services to their enrollees. The New Jersey Department of Human Services ("NJDHS") promulgated this regulation under its authority to promulgate rules to implement New Jersey's Medicaid program. *See id.* § 10:74-1.2; N.J. Stat. Ann. § 30:4D-7; *In re A.N.*, 63 A.3d 764, 769 (N.J. Super. Ct. App. Div. 2013).

On the first factor, the purpose of the New Jersey Medicaid statutory scheme is "to provide medical assistance . . . on behalf of persons whose resources are determined to be inadequate to enable them to secure quality medical care at their own expense." N.J. Stat. Ann. § 30:4D-2. The regulatory chapter that houses N.J.A.C. § 10:74-9.1 likewise expresses its purpose to "set forth the manner in which" MCOs "shall provide covered health services to eligible persons." N.J.A.C. § 10:74-1.1. Thus, generally, New Jersey's Medicaid program and managed care approach were enacted for the benefit of enrollees, not providers as such.

Zooming in on N.J.A.C. § 10:74-9.1, its language speaks of obligations on MCOs, not benefits to providers; the regulation repeatedly uses phrases like "the contractor [*i.e.*, the MCO] shall." *See Wright-Phillips v. United Airlines, Inc.*, Civ. No. 20-14609, 2021 WL 1221111, at *3–4 (D.N.J. Apr. 1, 2021) (applying similar test under federal law). To be sure, a provider "may receive a direct benefit" from the regulation because it obligates the MCO to pay the provider. *Jarrell*, 123 A.3d at 1030. But more is required to imply a private right of action: The statute or regulation must have been enacted for the "*especial* benefit" of the plaintiff—in this case, the provider. *Id.* at 1029 (citation omitted). While the regulation enables providers to receive payment, its thrust is to ensure that MCO enrollees receive emergency care regardless of whether the closest provider is in-network. *Cf. Ass'n of N.J. Chiropractors, Inc. v. Horizon Healthcare Servs., Inc.*, No. A-6033-11T4, 2013 WL 5879517, at *3–4 (N.J. Super. Ct. App. Div. Nov. 4, 2013) (statute requiring equal reimbursement of

chiropractors benefited consumers by allowing them access to chiropractor services). Thus, MHA has not made a strong showing on the first factor.

On the second factor, MHA has pointed to no evidence in the legislative or regulatory history showing an intent to create a private right of action.

On the third factor, the New Jersey Supreme Court holds that when another enforcement mechanism or remedy already exists, "a court should always hesitate to recognize another unmentioned remedy." *Jarrell*, 123 A.3d at 1030. Here, NJDHS may seek damages, terminate its contract with the MCO, or withhold payments to the MCO for failure to comply with its obligations. N.J.A.C. § 10:74-14.1. This enforcement mechanism displaces any implied private right of action. *Jarrell*, 123 A.3d at 1030.

What is more, the statutory scheme that encompasses N.J.A.C. § 10:74-9.1 includes the federal Medicaid statute. *See Sabree*, 367 F.3d at 182. Medicaid requires states to include, as terms in their contracts with MCOs, certain sanctions for non-compliance with Medicaid obligations, including obligations to cover out-of-network emergency services. 42 U.S.C. § 1396u-2(e). "The fact that the Medicaid statute expressly authorizes such sanctions further underscores that it was Congress's intent for states themselves—rather than private third parties—to police compliance with the requirements of the Medicaid program." *Prince George's*, 985 F. Supp. 3d at 50. Thus, Congress and New Jersey, in implementing a federal program, intended the remedy for Amerigroup's non-payment to be sought by NJDHS.

Because MHA has failed to make a showing on any of the *Cort* factors, I decline to imply a private right of action to enforce N.J.A.C. § 10:74-9.1.

### 2. N.J.A.C. §§ 11:24-5.1(a)(1), 11:24-5.3

N.J.A.C. § 11:24-5.1(a)(1) provides that "[i]f the HMO refers a member out of network, the service or supply shall be covered as an in-network service or supply, such that the HMO is fully responsible for payment to the provider." N.J.A.C. § 11:24-5.3 provides that HMOs shall have policies to cover emergency or urgent-care services. The New Jersey Department of Banking and Insurance

("NJDOBI") promulgated these regulations under its authority from the Health Maintenance Organizations Act ("HMO Act") to regulate HMOs, N.J. Stat. Ann. § 26:2J-21. There is no discernible private right of action for these regulations.

First, the purpose of the HMO Act was to authorize the creation of HMOs, which were, at the time, a new corporate/organizational form. *See Dunn v. Praiss*, 656 A.2d 413, 415 (N.J. 1995). The beneficiary was presumably the patient, as HMOs were seen as a "new concept" to improve "health care delivery." *Governor's Statement on Signing Senate Bill No. 2148* (Dec. 27, 1973). Like with the Medicaid regulation, these HMO regulations speak in terms of obligations on the regulated entities, HMOs. Likewise, although out-of-network providers may benefit, the primary purpose of the regulations cannot be to benefit the providers, because their obvious, overriding purpose is to ensure that HMO enrollees can always access emergency services.

On the second factor, MHA has pointed to no evidence in the legislative or regulatory history showing an intent to create a private right of action.

On the third factor, there is an administrative enforcement scheme that undermines any implication of a private right of action. NJDOBI may assess penalties, seek injunctive relief, or revoke an HMO's certificate for violations of the HMO Act and its implementing regulations. N.J. Stat. Ann. § 26:2J-24; N.J.A.C. § 11:24-2.14. Such remedies provisions make no mention of a civil remedy to providers, raising a strong inference that none exists or was intended.

Although MHA thus fails to make a showing on the *Cort* factors, it offers two reasons to save its claim. Neither has merit.

First, MHA points to a New Jersey trial court opinion holding that N.J.A.C. § 11:24-5.3 provided a private right of action. *N. Jersey Brain & Spine Ctr. v. Health Net, Inc.*, No. L-5421-08, 2009 WL 10696172, at *10 (N.J. Super. Ct. L. Div. Aug. 24, 2009). (Opp. at 20–21.) "State trial court opinions . . . do not bind federal courts predicting state law," and thus are persuasive authority only. *Ryu v. Bank of Hope*, Civ. No. 19-18998, 2021 WL 50255, at *5 n.7

8

(D.N.J. Jan. 6, 2021) (citations omitted). *Health Net* is not persuasive; it did not apply the *Cort* test and instead summarily concluded that there was a private right of action. 2009 WL 10696172, at *10. Its perfunctory analysis does not convince me the New Jersey Supreme Court would decide the issue similarly. *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 199 n.9 (3d Cir. 2004). Finally, *Health Net* allowed the claim to go forward because it was "plausible" that a cause of action existed. 2009 WL 10696172, at *10. But whether a statute creates a private cause of action is a legal question, and thus not a question of pleading sufficiency. *Am. Trucking Ass'n, Inc. v. Del. River Joint Toll Bridge Comm'n*, 458 F.3d 291, 295 (3d Cir. 2006); *see Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). For these reasons, I do not follow *Health Net.*

Second, MHA suggests that the "regulatory requirements are often incorporated into the parties' agreement, and so would be enforceable as a breach of implied contract." (Opp. at 22.) Putting aside the vagueness of this argument, the Complaint unequivocally alleges that it brings Count 1 pursuant to "a private right of action, express or implied, . . . under these regulations." (Compl. ¶ 108.) Thus, the Complaint does not use the regulations as the basis for an implied contract theory in Count 1. I will not retrofit this revised theory to effectively amend the Complaint, which controls. *See Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *Warfield v. SEPTA*, 460 F. App'x 127, 132 (3d Cir. 2012).

Because MHA presents no good reason otherwise, I decline to imply a private right of action to enforce N.J.A.C. §§ 11:24-5.1(a)(1) and 11:24-5.3.

* * *

There is no express or implied private of action to recover for violations of the regulations referenced in Count 1. The motion to dismiss Count 1 is GRANTED.

## B. Count 2

In Count 2, MHA alleges that Amerigroup's non-payment violated the New Jersey HINT Act. (Compl., Count 2.) The HINT Act establishes timetables

for health insurers to pay healthcare providers and imposes interest rates for late payments. *See* N.J. Stat. Ann. § 17B:26-9.1. Amerigroup argues that there is no private right of action to recover under the HINT Act. (Mot. at 17.) Unlike the regulations in Count 1, New Jersey courts have more fully addressed this question. I closely look at the two key cases and then discuss legislative developments post-dating them.

### 1. *Sutter v. Horizon BlueCross/Blue Shield of New Jersey*

The first case is *Sutter v. Horizon BlueCross/Blue Shield of New Jersey*, No. L-3685-02, 2003 WL 27381731 (N.J. Super. Ct. L. Div. Feb. 13, 2003), which applied the *Cort* factors to conclude that there is a private right of action under the HINT Act. On the first, the court reasoned that the Act benefits providers because it "compel[s] payers to promptly pay claims." *Id.* at *5. On the second, the court found a "close issue" "since the Legislature did not clearly evince its intent." *Id.* Nonetheless, the court explained that implementing regulations required insurers to use a non-binding arbitration mechanism to resolve payment disputes. *Id.* From this, the court reasoned that the non-binding nature evinced an intent by NJDOBI to allow providers to turn to a judicial forum if arbitration did not resolve the dispute. *Id.* On the third factor, the court acknowledged that NJDOBI could enforce the Act but concluded that, given the number of providers in the state, NJDOBI cannot "exclusive[ly]" handle enforcement. *Id.* at *7. Rather, a private remedy would complement agency enforcement. *Id.* Thus, the court held that the three factors favored the provider. *Id.*

### 2. *Medical Society of New Jersey v. AmeriHealth HMO, Inc.*

The next case is *Medical Society of New Jersey v. AmeriHealth HMO, Inc.*, 868 A.2d 1162 (N.J. Super. Ct. App. Div. 2005). There, an association of physicians (the Medical Society), on behalf of itself and its members, sued a health insurer, alleging that the insurer had contracted with its members but denied or delayed payment, thereby violating the HINT Act. *Id.* at 1164–65. The Society sought only injunctive or declaratory relief. *Id.* at 1165.

The Appellate Division issued a nuanced opinion, holding that the Society could not pursue a claim for injunctive or declaratory relief. *Id.* at 1167. But the court reserved judgment on whether the doctors themselves could pursue a damages claim. *Id.* The court explained that "[a]llowing the HINT Act to be privately enforced by doctors suing for overdue payment would appear to further the purpose of the Act by permitting the doctors, for whose benefit the statute was enacted, to recover the interest on those payments." *Id.* at 1168. But because only the Society was a plaintiff, the court did not decide the issue.

As to the Society's claims, however, the court concluded that there was no private right of action. *Id.* The court explained that the Act authorized NJDOBI to seek injunctive relief, and the court construed the Act in parallel with other New Jersey statutes that allow only the state agency to seek injunctive relief, while permitting individuals directly injured to seek damages. *Id.* at 1169. Thus, the Act displaced the Society's specific claims. *Id.*

### 3. Application

*Sutter* and *Medical Society* provide persuasive, if not binding, support for MHA's position. Nonetheless, legislative developments after *Sutter* (decided in 2003) and *Medical Society* (2005) clearly show an intent to displace a private cause of action.

In 2006, New Jersey enacted the Health Claims Authorization, Processing and Payment Act ("HCAPPA"), 2005 NJ Sess. Law Serv. ch. 352 (West). HCAPPA amended the HINT Act's prompt-payment provision to provide that (1) insurers must establish an internal appeals process to resolve disputes with providers, (2) if an appeal is resolved in favor of the provider, the insurer must pay the provider with interest, (3) if an appeal is resolved in favor of the insurer, the provider may seek arbitration, (4) the arbitrator can order the insurer to make payment with interest, and (5) the arbitrator's decision is binding and final. HCAPPA § 13, *codified at* N.J. Stat. Ann. § 17B:26-9.1(e)(1).

HCAPPA is dispositive in the private-right-of-action analysis. It renders much of *Sutter*'s and *Medical Society*'s reasoning moot. The Legislature's

11

creation of a detailed and specific arbitration mechanism clarifies its intention that disputes be resolved by arbitration, not litigation, and firmly establishes that a private right of action is unnecessary to accomplish the statute's purposes. *Warren Cnty. Bar Ass'n v. Bd. of Chosen Freeholders of Cnty. of Warren*, 899 A.2d 1028, 1034 (N.J. Super. Ct. App. Div. 2006); *see also Dolan v. U.S. Equestrian Team, Inc.*, 608 A.2d 434, 437 (N.J. Super. Ct. App. Div. 1992). *Sutter*, it is true, considered that NJDOBI required arbitration even then, but those procedures differed from those soon to be imposed by HCAPPA. *Sutter* found it significant, for example, that the then-current arbitration procedures were non-binding, so a judicial remedy was ultimately necessary to allow providers to enforce their rights. 2003 WL 27381731, at *6. The HCAPPA-prescribed procedures, by contrast, are binding, and the arbitrator is required to file its determination with NJDOBI, which can enforce it if need be. N.J. Stat. Ann. § 17B:26-9.1(e)(4), (7). Thus, HCAPPA appeases *Sutter*'s concerns and obviates the need for a private right of action.

Nonetheless, MHA argues that HCAPPA helps its position because the Legislature did not reject *Sutter* and *Medical Society* when amending the HINT Act with HCAPPA, thus approving their judicial constructions. (Opp. at 21.) True, when the Legislature amends a statute, courts may presume that it did not "alter an established judicial interpretation absent a clear manifestation of such intent." *Coyle v. Bd. of Chosen Freeholders*, 787 A.2d 881, 886 (N.J. 2002) (quotation marks and citation omitted). But this canon of statutory interpretation has little force here for two reasons.

First, that canon works best when the judicial construction in question is authoritative: *i.e.*, it comes from the New Jersey Supreme Court, the final interpreter of New Jersey law, or a firm line of Appellate Division decisions. *See, e.g.*, *State v. Smith*, 963 A.2d 281, 286–87 (N.J. 2009); *State v. Chapland*, 901 A.2d 351, 361–62 (N.J. 2006). The judicial construction in this case, by contrast, consists of one trial-court opinion and *dicta* from an Appellate Division opinion. The Legislature might not have found it necessary, or even

12

pressing, to rebut these nonbinding interpretations, and I draw no strong inference that it consented to them.

Second, a different interpretive canon[4] provides that courts should interpret amendments to work a change in the law and avoid rendering them "meaningless." *Kasper v. Bd. of Trs. of Teachers' Pension & Annuity Fund*, 754 A.2d 525, 532 (N.J. 2000); *accord Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." (citation omitted)). Implying a private right of action would undermine the Legislature's directives to insurers to follow a particular dispute-resolution scheme. In other words, allowing providers to immediately sue under the HINT Act would create a workaround that would nullify the carefully calibrated procedures fashioned by the Legislature. To give meaningful effect to the procedures prescribed by HCAPPA, it is necessary to close off that alternative.

Given HCAPPA, I decline to imply a private right of action to seek damages under the HINT Act. Accordingly, the motion to dismiss Count 2 is GRANTED.

## C. Count 3

Count 3 is a claim for "Fraudulent and Negligent Misrepresentation & Equitable and Promissory Estoppel." (Compl., Count 3.) MHA alleges that Amerigroup misrepresented to MHA that it would cover services provided to

---

[4]     It has become a maxim in its own right that the canons of interpretation are Janus-faced: "Specific canons 'are often countered ... by some maxim pointing in a different direction.'" *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001)). Famously, Karl Llewellyn published a list of twenty-eight such canons, each paired with its "counter-canon," from which he drew the legal-realist conclusion that the canons may be employed to obtain any result. Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules of Canons About How Statutes are to be Construed*, 3 Vand. L. Rev. 395 (1950). I draw the less drastic conclusion that the canons are useful tools, but that there is no escape from the obligation of sound legal reasoning. For a more systematic view, incorporating a more sympathetic view of the canons, *see* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts (2012).

Amerigroup enrollees but never intended to pay those claims. (*Id.* ¶¶ 124, 126.) Thus, Amerigroup "fraudulently induced" MHA to provide services. (*Id.* ¶ 128.)

Fraud-based claims are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) applies to fraudulent misrepresentation because it is, on its face, a fraud claim. *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, --- F. Supp. 3d ----, ----, Civ. No. 18-10675, 2021 WL 303030, at *7–8 (D.N.J. Jan. 29, 2021). But Rule 9(b) also applies to claims under any legal theory whose supporting factual allegations "sound in fraud." *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 272 (3d Cir. 2006). As a result, if negligent misrepresentation, equitable estoppel, or promissory estoppel claims are based on intentional misrepresentations or knowingly false promises, Rule 9(b) applies. *Durr*, 2021 WL 303030, at *7–8 (negligent misrepresentation); *Bayer CropScience AG v. Dow AgroSciences LLC*, Civ. No. 10-1045, 2011 WL 6934557, at *3 (D. Del. Dec. 30, 2011) (equitable estoppel); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949–50 (7th Cir. 2013) (promissory estoppel); *see Suprema*, 438 F.3d at 272.

Count 3's factual allegations sound in fraud. Count 3 alleges that Amerigroup "materially misrepresented" that it would cover services when it currently had no intention to do so, and that these statements were "fraudulent[ ]." (Compl. ¶¶ 124, 128.) There is no allegation that Amerigroup made its representations or promises negligently; rather, the Complaint is clear that Amerigroup's practices were "intentional, willful and malicious." (*Id.* ¶ 127.) Accordingly, no matter the precise legal theory, Rule 9(b) applies "across the board" to Count 3. *Durr*, 2021 WL 303030, at *8.

Count 3 does not satisfy Rule 9(b), which requires that the plaintiff plead "the who, what, when, where, and how of the events at issue." *U.S. ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (citation omitted). The Complaint never goes beyond generalities. It never identifies a speaker or specific communications. *See Frederico v. Home Depot*, 507 F.3d 188, 201 (3d

Cir. 2007) (Rule 9(b) "requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements." (citation omitted)); *compare Durr*, 2021 WL 303030, at *9 (allegations sufficient when they referred to bid process on specific date). MHA jumps over the motion-to-dismiss stage, stating in its brief that in discovery it will produce documents "memorializing the preauthorizations provided by Amerigroup for disputed claims." (Opp. at 24–25.) But MHA must adequately allege a cause of action in its complaint; statement in a brief won't do. *See Frederico*, 507 F.3d at 201 ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint . . . .").

Because Count 3 does not satisfy Rule 9(b), the motion to dismiss Count 3 is GRANTED.

### D. Counts 4 and 5

Count 4 is a claim for unjust enrichment. It alleges that MHA conferred a benefit, *i.e.*, medical treatment, on "Amerigroup's . . . members," but Amerigroup has unjustly withheld payments for those treatments. (Compl. ¶¶ 134, 136.) Count 5 is a claim for quantum meruit, similarly alleging that MHA provided services to Amerigroup members for which Amerigroup should now pay. (*Id.* ¶¶ 143–46.) Amerigroup argues that (1) the Network Agreement and its Medicaid contract with New Jersey preclude these claims, and (2) MHA fails to allege a cognizable benefit. (Mot. at 26–27.) Both arguments lack merit.

First, it is true that "a claimant cannot collect damages for breach of express contract and recover the same damages on a quasi-contract theory such as quantum meruit or unjust enrichment." *Gap Props., LLC v. Cairo*, Civ. No. 19-20117, 2020 WL 7183509, at *4 (D.N.J. Sept. 17, 2020). But because Rule 8 permits alternative pleading, "federal courts applying New Jersey law have generally declined to dismiss quasi-contract claims that are pleaded along with express contract claims." *Id.* At least when it comes to the Network Agreement, this could be a case in which dismissal of a quasi-contract claim is justified to eliminate clutter, because the Complaint clearly alleges that the

contract is binding and thus does not use a quasi-contract theory as an alternative. *Compare id.* (permitting quasi-contract theories because the breach of contract theory was based on an allegedly implied term that the court could reject). But MHA also seeks to recover for claims dating from after the Network Agreement ended, so no contract would preclude those. Although Amerigroup makes a passing argument that its contract with New Jersey to administer Medicaid governs its relationship with MHA for this period, I am unable to see how a contract to which MHA was not a party could have that effect. Thus, to dismiss the quasi-contract claims based on the existence of express contracts would be at best premature.

Second, Amerigroup's argument that the Complaint fails to allege a benefit is contrary to Third Circuit precedent. Unjust enrichment requires that the defendant "received a benefit and that retention of that benefit without payment would be unjust." *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016) (citation omitted). Quantum meruit similarly requires "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Starkey, Kelly, Blaney & White v. Estate of Nicolaysen*, 796 A.2d 238, 242–43 (N.J. 2002) (citation omitted). Without venturing into the differences between the two, "[r]ecovery under both of these doctrines requires a determination that defendant has benefitted from plaintiff's performance." *Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 162 A.3d 306, 310 (N.J. Super. Ct. App. Div. 2017). Amerigroup argues that the benefit in this case, medical services provided by MHA, inures only to the patients treated, not to Amerigroup.

Amerigroup is correct that many, although not all, courts in this District saw things that way, but the Third Circuit now sees it differently. In *Plastic Surgery Center, P.A. v. Aetna Life Insurance Co.*, the Court explained that "where a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*,

but rather the discharge of the obligation the insurer owes to its insured." 967 F.3d 218, 240 (3d Cir. 2020) (footnote omitted). The Court rejected contrary district-court cases, stating that they relied on inapposite case law and overlooked New Jersey Supreme Court precedent allowing unjust enrichment claims against insurers. *Id.* at 240 n.26. I am bound by *Plastic Surgery Center*, so Amerigroup's argument (which relies on the very district court decision reversed by *Plastic Surgery Center*) is without merit.

Accordingly, the motion to dismiss Counts 4 and 5 is DENIED.

### E. Count 6

Count 6 is pleaded as a claim for "Repudiation of the Network Agreement." (Compl., Count 6.) The parties devote little attention to explaining the "repudiation" aspect of this claim. (Opp. at 30; Reply at 9.) It appears to be, more simply, a claim that Amerigroup "breached" the Network Agreement by failing to make payments pursuant thereto. (*Id.* ¶ 155.) MHA simply argues that because Amerigroup breached the contract (without specifying how), MHA was excused from further performance. (Opp. at 30.) But MHA's performance (providing medical services) was already complete, so the concept of "repudiation" appears to add little if anything to the argument.

All that aside, within Count 6 is a discernible breach of contract claim: Amerigroup failed to pay MHA what it was obligated to pay under the Network Agreement. "Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). I need not dismiss Count 6 "if there are adequate factual allegations and the court can readily discern a claim." *Wright-Phillips*, 2021 WL 1221111, at *11 n.7 (citing *Johnson*, 574 U.S. at 11). I can do so here, notwithstanding the misplaced focus on repudiation.

Amerigroup only moves to dismiss Count 6 on the basis that MHA fails to plead a "repudiation." (Mot. at 27–28) Because I do not find that repudiation is essential to the claim, the motion to dismiss Count 6 is DENIED.

17

### F. Count 7

Count 7 is a standalone claim for negligent misrepresentation, relying on allegations similar to those in Count 3. (Compl. ¶¶ 159–61.) Unlike Count 3, however, Count 7 does include an allegation that "Amerigroup defendants *negligently* represented that it would provide proper coverage to the patients." (*Id.* ¶ 159 (emphasis added).) As a result, Count 7 comes closer to distinguishing negligent misrepresentation from fraudulent misrepresentation in a way that would allow MHA to escape the heightened pleading standard of Rule 9(b). *See Durr*, 2021 WL 303030, at *7–8.

Nonetheless, MHA still has not "exercised care in differentiating asserted negligence claims from fraud claims." *Suprema*, 438 F.3d at 272. For starters, the Complaint does not provide any factual allegations to indicate how Amerigroup was negligent. Negligence is a legal conclusion; even under ordinary pleading standards, plaintiff is required to plead facts from which the court can infer a duty and breach. *See Reed v. Profeta*, 397 F. Supp. 3d 597, 637 (D.N.J. 2019) (explaining what qualifies as a negligent statement). Moreover, the few remaining allegations in Count 7 undermine any conclusion that MHA actually alleges negligence or culpable inadvertence; MHA alleges that Amerigroup "*intended*" MHA to rely on its statements. (Compl. ¶ 160 (emphasis added).) *See Durr*, 2021 WL 303030, at *8 (a plaintiff fails to distinguish between negligent and fraudulent misrepresentation when it makes allegations of knowledge, intent, or deliberateness). Accordingly, Count 7, stripped of legal conclusions, comes down to a fraud claim, subject to Rule 9(b), which fails for the same reasons that Count 3 does. (Section III.C, *supra*.)

The motion to dismiss Count 7 is therefore GRANTED.

### G. Count 8

In Count 8, MHA alleges that it is a third-party beneficiary of Amerigroup's Medicaid contract with New Jersey; that the contract requires Amerigroup to cover emergency services; and that Amerigroup breached that requirement by denying payment to MHA. (Compl. ¶¶ 165–67, 171.) To state a

18

third-party beneficiary claim, MHA must plausibly allege that Amerigroup and New Jersey "intended [MHA] to benefit from the existence of the [Medicaid contract]." *Ross v. Lowitz*, 120 A.3d 178, 189–90 (N.J. 2015) (quoting *Broadway Maint. Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 909 (N.J. 1982)). "The contractual intent to recognize a right to performance in the third person is the key." *Broadway,* 447 A.2d at 909; *see also Dravo Corp. v. Robert B. Kerris, Inc.*, 655 F.2d 503, 510 (3d Cir. 1981) ("New Jersey courts have been hesitant to imply a third-party beneficiary obligation without an explicit indication by the parties that . . . [the third party] will have a direct claim under the contract."). Courts will glean that intent "from an examination of the contract and a consideration of the circumstances." *Rieder Cmtys., Inc. v. Township of N. Brunswick*, 546 A.2d 563, 597 (N.J. Super. Ct. App. Div. 1988).

Because MHA does not submit the Medicaid contract itself, my consideration is largely confined to the allegations of the Complaint. (Compl. ¶¶ 167–68)[5] So I am left to discern whether MHA has alleged the requisite intent from the Complaint alone. The Complaint simply alleges that MHA "is an intended third-party beneficiary," a legal conclusion. (*Id.* ¶ 166.) While MHA would obviously benefit from the contract, there are no factual allegations to support the critical inference that Amerigroup and New Jersey *intended* that MHA would be able to sue to enforce the contract. Absent allegations as to that

---

[5]    Actually, Amerigroup provides one portion of the contract with the motion to dismiss, and its authenticity appears to be undisputed, so I might consider that extract. *See Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). The extract provides that "[n]othing in this contract is intended or shall confer upon anyone, other than the parties hereto, any legal or equitable right, remedy or claim against any of the parties hereto." (DE 56-4 ¶ 7.20.6.) This provision standing alone could defeat a third-party beneficiary claim. *See TekDoc Servs., LLC v. 3i-Infotech Inc.*, Civ. No. 09- 6573, 2012 WL 3560794, at *15 (D.N.J. Aug. 16, 2012). Still, I am cognizant that I do not have the remainder of the contract, which evidently runs to hundreds of pages, and the court is obligated to read contracts "as a whole." *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 958 (N.J. 2014) (citation omitted). So, although I do ultimately find the third-party-beneficiary allegations insufficient, I do not rest my decision on this clause.

"key" element, the third-party beneficiary claim must be dismissed. *Gap Props.*, 2020 WL 7183509, at *6 (citation omitted).

For those reasons, the motion to dismiss Count 8 is GRANTED.

### H. Remaining Arguments

Three claims remain: unjust enrichment, quantum meruit, and breach of contract. Amerigroup asserts arguments for dismissal that cut across multiple claims or sub-parts of multiple claims. I address those cross-cutting arguments to the extent they bear on the three remaining claims.

#### 1. Statute of Limitations and Laches

Amerigroup argues that the statute of limitations bars MHA's recovery for some of the accounts because they were adjudicated more than six years ago. (Mot. at 32–33.) Similarly, Amerigroup argues that laches bars recovery because MHA inexcusably delayed in seeking recovery on some accounts. (*Id.* at 33–34.) Statute of limitations and laches are both affirmative defenses. *Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017) (statute of limitations); *Univ. of Pittsburgh v. Champion Prods.*, 686 F.2d 1040, 1044 (3d Cir. 1982) (laches). "Affirmative defenses generally depend on extrinsic facts, and the Third Circuit therefore requires that a court tread warily, dismissing under Rule 12(b)(6) only when the plaintiff has effectively pled itself out of court." *Gaetano v. Gilead Scis., Inc.*, Civ. No. 21-01418, 2021 WL 1153193, at *11 (D.N.J. Mar. 26, 2021) (citations omitted).

Here, MHA has attached a spreadsheet to its Complaint listing account numbers, the patient's admission and discharge dates, and Amerigroup's outstanding balance. (Compl., Ex. D.) Amerigroup effectively asks me to excise from this case any accounts with dates older than the statute of limitations for contract and quasi-contract claims would allow.

As to laches, Amerigroup does not specify which accounts are subject to that doctrine. In any event, this equitable defense requires consideration of facts not typically found in a complaint. *Kaufhold v. Caiafa*, 872 F. Supp. 2d

374, 379 (D.N.J. 2012). The statute of limitations, too, requires consideration of such issues as tolling, which are often ill-suited to the Rule 12(b)(6) analysis.

This count is going forward to discovery in any event. There is little to be gained from line-editing this spreadsheet when a bit of discovery will permit the court to make a more sure-footed determination. The motion to dismiss based on the affirmative defenses of laches and the statute of limitations is therefore DENIED as premature.

### 2. Medicare Preemption

Amerigroup argues that, to the extent MHA seeks recovery for services provided to Medicare enrollees, the Medicare Act preempts those claims. (Mot. at 11–13.) The Medicare Act indeed contains a preemption provision stating that "[t]he standards established under this part shall supersede any State law or regulation . . . with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part." 42 U.S.C. § 1395w-26(b)(3). The U.S. Court of Appeals for the Ninth Circuit has held that this provision could "preempt at least some common law claims." *Do Song Uhm v. Humana, Inc.*, 620 F.3d 1134, 1155 (9th Cir. 2010). Amerigroup argues that the Medicare Act establishes standards for which services a plan must reimburse a provider and at what rate, the contract or quasi-contract claims overlap with those standards, and they are thus preempted. (Mot. at 12 (citing, *e.g.*, 42 C.F.R. §§ 422.100(b)(1), 22.214(b)).)

Nonetheless, preemption is an affirmative defense; if it is to be the basis for a Rule 12(b)(6) dismissal, its application must be patent on the face of the complaint. *Gaetano*, 2021 WL 1153193, at *11. The spreadsheet, however, does not even clearly specify which accounts were Medicare accounts. Amerigroup suggests that I generally hold that the claims are preempted to whatever (unspecified) extent they are based on Medicare accounts. I retain discretion, however, with respect to advisory dismissals of sub-theories. *See loanDepot.com v. CrossCountry Mortg. Inc.*, 399 F. Supp. 3d 226, 235 (D.N.J. 2019). Three claims are going forward in any event, and discovery will permit

the Court to rule specifically. For now, the motion to dismiss based on Medicare preemption is DENIED.

### 3. Parent Corporation Liability

Amerigroup argues that claims against the parent corporation (Amerigroup Corp.) should be dismissed because MHA only dealt and contracted with the subsidiary entity (Amerigroup New Jersey, Inc.). (Mot. at 15; Reply at 2–3.) The Complaint lumps Amerigroup Corp. and Amerigroup New Jersey together and attributes all the conduct alleged in the Complaint to them both. (Compl. ¶ 6.) Nonetheless, the Network Agreement, which governs the lion's share of the recovery sought (*id.* ¶¶ 91–92), names only Amerigroup New Jersey as a contracting party (*id.*, Ex. B at 1).

I will dismiss Amerigroup Corp. as a defendant. Two principles animate this conclusion. For one, separate corporate forms must be respected and will not be disregarded to impose liability on an entity for the acts of a related entity except in limited circumstances. *United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998); *see also State, Dep't of Env't Protect. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983). Second, the Rule 12(b)(6) standard requires the plaintiff to plausibly allege that each "defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As a result, courts in this District generally do not allow "group pleading," because the complaint must allege "sufficient facts to identify each defendant's role." *D'Addario v. Johnson & Johnson*, Civ. No. 19-15627, 2020 WL 3546750, at *6 (D.N.J. June 30, 2020) (citations omitted). Putting those principles together, courts dismiss claims alleged indiscriminately against multiple corporate defendants without factual allegations warranting an inference that each could be liable. *Glob. Fresh Produce, Inc. v. Epicure Trading, Inc.*, Civ. No. 11-01270, 2012 WL 924326, at *6 (D.N.J. Mar. 16, 2012).

The Complaint does not allege any facts to permit an inference that Amerigroup Corp. should equally be liable. Rather, the Network Agreement makes clear that the contractual relationship in this case, and thus any

lingering quasi-contractual relationship, existed between Amerigroup New Jersey and MHA. Absent facts to disregard the separate corporate forms, I cannot infer that Amerigroup Corp. is factually alleged to be liable for the conduct alleged. *Id.*; *see also Gap Props.*, 2020 WL 7183509, at *6 (generally, only parties to the contract can be subject to breach of contract claims).

The motion to dismiss Amerigroup Corp. from the case is therefore GRANTED.

## IV.   CONCLUSION

For the reasons set forth above, the motion to dismiss is granted in part and denied in part. It is granted as to Counts 1, 2, 3, 7, and 8. It is denied as to Counts 4, 5, and 6. Counts 4, 5, and 6 are dismissed, however, insofar as they are asserted against Amerigroup Corporation.

A separate order will issue.

Dated: May 17, 2021

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**